### Hayward Lumber Co. v. W. H. Bonner et al.

Decided May 26, 1909.

**1.—Deed—Execution—Circumstantial Evidence.**

The existence and execution of a deed may be shown by circumstances as well as by direct proof.

**2.—Notice—Unrecorded Deed—Occupancy of Land.**

Actual possession and occupancy of land is constructive notice of the title of the occupant though his deed be unrecorded.

**3.—Same.**

The original grantee of a 320-survey conveyed the same to P. and W. as joint owners; the deed to P. and W. was never recorded; the joint owners

partitioned the land among themselves, and P. took actual possession of the portion allotted to him; the portion allotted to W. was not occupied. Held, a subsequent purchaser of the entire 320-survey from the heirs of the original grantee having actual notice of the possession of P. was by reason of such possession charged with notice of the deed to P. and W., by the original grantee and therefore could not claim to be an innocent purchaser.

Appeal from the District Court of Nacogdoches County. Tried below before Hon. Jas. I. Perkins.

*Ingraham, Middlebrook & Hodges,* for appellant.—The court erred in finding as a fact that the plaintiff was not an innocent purchaser of the land in controversy or any part of it, because it had notice of the outstanding title emanating from A. F. G. Shannon or knowledge of such facts as put it upon inquiry; because such finding of fact is not warranted by the evidence nor supported by it, and the evidence is insufficient to support such finding. Holmes v. Buckner, 67 Texas, 110; Bracken v. Jones, 63 Texas, 184; Cook v. Dennis, 62 Texas, 248-49; Watkins v. Edwards, 23 Texas, 445; Turner v. Moore, 16 S. W., 929.

*E. J. Mantooth* and *Geo. W. Matthews,* for appellee.

JAMES, CHIEF JUSTICE.—The action is brought by the Hayward Lumber Company in trespass to try title to the A. F. G. Shannon 320-acre survey. Plaintiff's title was a consecutive chain from the State, to wit: Patent to Shannon, dated in 1861; deed from Shannon's heirs to Emma Still and others, dated July 31, 1905, and deeds from these in 1906 and 1907 conveyed to plaintiff. No question exists as to plaintiff's *prima facie* record title to this land. No deed exists upon record contrary to that title. The cause was tried by the judge, whose judgment was against plaintiff.

The assignments of error attack the judge's conclusions as not sustained by the evidence. The findings of fact in full are:

"1. I find that A. F. G. Shannon, the original grantee of the land in controversy, made a valid deed of conveyance of the 320-acre survey to L. B. Polk and Dr. Woolwine.

"2. I find as a fact that the plaintiff paid a valuable consideration for said land, but that it is not an innocent purchaser of said land or any part thereof, but that it had notice of the outstanding title emanating from A. F. G. Shannon, or of such facts as put it upon inquiry, and which, if followed, would have led to full knowledge of such title, before it purchased said land.

"3. I find as a fact that the Angelina Lumber Company, J. A. Dickerson and J. W. Grimes have title to the 120 acres of land off of the north half of said 320 acres of land deeded by C. W. Polk to John L. Farr, by limitations independently of the deed from A. F. G. Shannon."

The conclusion of law was: "On the above facts I conclude the law is with the defendants, and that plaintiff ought not to recover any of the land in controversy, and that the Angelina Lumber Company

should have judgment for the land described in its answer, and that plaintiff should pay all the costs of suit."

Reviewing these findings by the testimony, we conclude that the evidence would have been ample to show that Shannon, about 1859 or 1860, made a parol sale and delivery of the entire tract to Dr. Woolwine and his son-in-law, L. B. Polk, and that these persons or those holding under them added improvements of a substantial nature to the property. But that was not the finding of the judge. The finding was that a valid deed of conveyance of the land was made to Polk and Woolwine. That a deed was made does not require direct proof, but the same may be found from circumstances as well. The court may find the fact from the conduct of the parties with reference to the land, its persistent claim by one and non-claim by the other, long continued, under circumstances reasonably consistent only with the transmission of the title. The evidence in this record is replete with circumstances which would support the finding made.

As to the second finding, which is that plaintiff bought the land with notice or with knowledge of facts which should have led to notice of the conveyance by Shannon to Polk and Woolwine, it appears that Polk and Woolwine upon their purchase, or soon after in 1859 or 1860, entered into possession of this land, occupying Shannon's improvements which he turned over to them. They soon after divided the land by a line they fixed, Woolwine taking the north 120 acres, the improved part, and Polk the south 200 acres, then unimproved. Adverse possession, according to the testimony, of the 120 acres began then and has continued to this day under that title, which makes the judgment clearly right as to the 120 acres upon the plea of limitations, as stated in the third finding.

The question of more or less difficulty is in that branch of the judgment which involves the 200 acres. The court did not give this judgment on account of any limitations; indeed, the testimony does not seem to support that ground. That part of the judgment must stand, if at all, upon the ground upon which the court placed it, viz.: That as to this part plaintiff was affected with notice of the conveyance to Polk and Woolwine of the entire survey.

There can be no question that as to the 120 acres the possession and occupancy of it under the Polk and Woolwine claim was constructive notice at all times of such title, though it was unrecorded. (Mattfeld v. Huntington, 17 Texas Civ. App., 716; Watkins v. Edwards, 23 Texas, 443.) But did the constructive notice by possession of that part operate to protect the 200-acre portion which does not seem, at the time the title held by plaintiff was obtained, to have been occupied? It does not clearly appear from the evidence that those now claiming this 200 acres are claiming in privity with the Polk and Woolwine title. Ever since the division of the land between Polk and Woolwine there has been a well-defined or well-recognized division line between the 120 acres and the 200 acres, and they have ever been regarded as independent tracts. Under these circumstances we doubt that the constructive notice given by the actual possession of the 120-acre tract would extend to the 200 acres.

However, the trial court has found as a fact that notice was con-

veyed, or that plaintiff's title was acquired with knowledge of facts which should have led to notice of the Polk and Woolwine title. If there are any facts or phase of the evidence which would sustain this general finding, we must assume that the court found them and based its decision upon them. There is high authority for the proposition that, where a subsequent purchaser buys land which is in part owned and occupied by one under an unrecorded title covering the whole survey, the mere possession of such occupant is constructive notice only to the extent of such part owner's title, yet if the subsequent purchaser is shown to have had actual knowledge of such occupant's possession, he has more than mere constructive notice. In the case of Daggs v. Ewell, 3 Woods' Reports, 344, the principle is stated in the following quotation therefrom: "It was strongly urged by counsel for Geo. W. Ewell that as complainant conceded that the possession by Wilson of 555½ acres of the mortgaged premises was notice of his equity, that his possession of a part was notice to complainant of the condition of the title to the entire tract; that Wilson being in possession of a part, complainant was bound to inquire as to his equities, and such inquiry would have revealed the equities of George W. Ewell. We think this position would be sound if the complainant had actual notice of the possession of Wilson. In that case he would, on inquiry as to Wilson's rights, have learned of the defect in James B. Ewell's title and would have been bound to follow up the inquiry with diligence, and such inquiry would have revealed the equities of Geo. W. Ewell. But it is not shown that complainant or his agent had any actual notice of the possession of Wilson. The possession of Wilson was, therefore, constructive notice to him of Wilson's rights only, and that notice being constructive, could not extend its effects beyond Wilson's possession," citing Watkins v. Edwards, 23 Texas, 443. See also Jones on Mortgages, sec. 595.

The trial judge here was authorized to find that Meisenheimer, through whom the subsequent title was obtained and who was in the employ of the Hayward Lumber Company and before the purchase, went upon this tract of land and went to defendant Jim Grimes's house, which was upon the 120 acres. He, therefore, had actual notice of the possession of that part. This is enough to support the conclusion of fact, and the judgment should, therefore, be affirmed.

*Affirmed.*

Writ of error refused.